A08A2256. NEWTON v. THE STATE.
(674 SE2d 379)

MILLER, Chief Judge.

Following a jury trial, Perry Anthony Newton was convicted of one count of rape (OCGA § 16-6-1), four counts of child molestation (OCGA § 16-6-4 (a)), and one count of aggravated child molestation (OCGA § 16-6-4 (c)). He now appeals from the trial court's denial of his new trial motion, claiming that the evidence was insufficient to support his convictions. Newton further asserts that the trial court erred in admitting: (1) a taped, forensic interview of the victim, conducted at the request of police; (2) three pornographic magazines Newton admitted to having in his possession at the time of one of the alleged incidents; and (3) certain testimony offered by the State as part of its rebuttal case. Discerning no error, we affirm.

On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence. We determine only whether the evidence authorized the jury to find the defendant guilty beyond a reasonable doubt, and in doing so we neither weigh that evidence nor judge the credibility of the witnesses.

(Citations and punctuation omitted.) *Drammeh v. State*, 285 Ga. App. 545, 546 (1) (646 SE2d 742) (2007).

So viewed, the evidence shows that in March 2004, the then nine-year-old victim, T. W., told one of her teachers that she had been sexually abused. The school contacted the City of Swainsboro Police Department, and Detective Joe N. Cephus was assigned to investigate the allegations. Detective Cephus arranged for the victim to be interviewed by trained personnel at the Sunshine House Child Advocacy Center in Swainsboro. That interview, which was videotaped, was conducted by Tonya Harris, a licensed counselor trained to conduct forensic interviews of children who have reported abuse. The taped interview was admitted at trial, over the objection of defense counsel, and played for the jury.

During that interview, T. W. drew pictures in which she indicated that she had been touched inappropriately on the breasts, genitals, and buttocks. She then wrote the name "Perry" at the top of one of the pictures and circled the name. When Ms. Harris questioned the victim about the pictures, the victim stated that on one occasion she had been watching television while sitting on the floor of her mother's bedroom and that Newton began a conversation with the victim, telling her "you are my baby, you are the only one." Newton asked the victim if she "had ever had sex with a boy," stating "well you are about to have sex with a man." Newton then twice fondled T. W.'s breasts, buttocks, and genitals, and penetrated her vagina and her anus with his penis. The victim further stated that Newton had also had vaginal and anal sex with her at his house on another occasion.

The victim's mother testified that on the day of the incident at her house, Newton brought his wife and children over to visit, but she thought Newton then left. At the time, the mother was in the back yard, and when she tried to re-enter the house through the back door she found it locked, even though she generally left it unlocked. When the mother could not get T. W. to respond to her knocks at the back door, she went to the front of the house. There, the mother saw Newton exiting the house through the front door, holding up his pants, which were unbuttoned and unzipped.

Detective Cephus testified that when questioned by police,

Newton admitted to being in the same room with T. W. at the time of the alleged incident at the mother's house. Newton further stated that he was sitting on the bed, reading sexually explicit magazines. Cephus recovered these magazines from Newton's house and, over the objection of defense counsel, they were admitted as evidence at trial. The magazine covers contained subtitles that included *"We're Young & Dirty," "Tight and Tiny Teens — Not Too Small To Take It All," "Teen Cherries Ready to Pop,"* and *"A-Cup Cuties Special."*

During its case, the defense presented the testimony of Sonya Shipman, Newton's ex-wife, who stated that Newton had never been alone with either the victim or other children and that she had never heard of Newton acting inappropriately with either the victim or other children. In rebuttal, the State called Valerie Rucker. Ms. Rucker testified that she knew of occasions on which Newton was alone with the victim and other young girls, and that she had witnessed Newton kissing one of his stepdaughters on the mouth.

Following his conviction, Newton filed a motion for a new trial. The trial court denied that motion, and this appeal followed.

1. Newton challenges the sufficiency of the evidence, arguing (i) that he has been convicted of four counts of child molestation based on evidence of "six touchings" on two occasions, and (ii) that his convictions of rape and aggravated child molestation were not supported by evidence of vaginal and anal penetration. We disagree.

(a) Child Molestation.

"A person commits the offense of child molestation when he . . . does any immoral or indecent act . . . in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of . . . the person." OCGA § 16-6-4 (a).

Newton was indicted upon four counts of child molestation. Specifically, Counts 2 through 4 of the indictment charged him with child molestation by fondling the breasts, the private area, and the buttocks of the victim. Count 5 of the indictment charged him with indecently exposing himself to the victim. Newton generally challenges the sufficiency of the evidence in light of evidence showing inconsistencies in T. W.'s videotaped statement, the victim's inability to reiterate her allegations against Newton or identify him at trial, the victim's psychological problems, and the prejudicial admission of pornographic magazines.

At trial, T. W. testified that one of the sexual incidents occurred in her mother's bedroom when she was watching television on the floor and Newton was on the bed. When asked by the prosecutor what Newton was doing on the bed, T. W. testified that she could not remember and then could not describe the incident that occurred in the bedroom. With respect to the same incident, T. W. could not recall the two questions Newton asked her because she was scared. The

jury was allowed to consider the victim's out-of-court statements as substantive evidence under the Child Hearsay Statute.[1] In the videotaped interview, T. W. described the incident at her mother's house where Newton asked her if she "had ever had sex with a boy," stating "well you are about to have sex with a man." T. W. told Ms. Harris that Newton twice touched her breasts, buttocks, and genitals and penetrated her vagina and her anus with his penis. The victim also used pictures to show where Newton touched her inappropriately and stated that Newton had vaginal and anal sex with her at his house on another occasion.

Conflicts between the victim's testimony at trial and the victim's out-of-court statements were for the jury to resolve. *Amerson v. State*, 268 Ga. App. 855 (1) (602 SE2d 857) (2004). Even if the child is "incapable of reiterating the accusation at trial or is unresponsive or evasive during cross-examination, the jury must decide the child's credibility. . . ." (Citation and punctuation omitted.) *Jones v. State*, 200 Ga. App. 103 (1) (407 SE2d 85) (1991). Where, as here, the victim could not reiterate the molestation incidents at trial, the jury apparently chose to credit T. W.'s taped interview. Further, any discrepancies in the evidence presented issues for the jury, not this Court, to resolve. *Berman v. State*, 279 Ga. App. 867, 867-868 (1) (632 SE2d 757) (2006).

While the victim's testimony alone was sufficient to authorize a conviction for child molestation (see OCGA § 24-4-8), the witnesses to the outcry, Ms. Harris and the school counselor, corroborated the victim's account of Newton's sexual acts. *Ferrell v. State*, 256 Ga. App. 692, 694 (1) (569 SE2d 899) (2002). The evidence showed that Newton touched T. W. in a sexual manner at least twice on her breasts, buttocks and genital area and that he appeared before T. W. with his pants down. Such evidence sufficed to sustain his convictions for four counts of child molestation. See OCGA § 16-6-4 (a).

(b) Rape and Aggravated Child Molestation.

To prove that Newton was guilty of rape, the State was required to show that Newton had "carnal knowledge of [a] female who is less than ten years of age." OCGA § 16-6-1 (a) (2). To prove that Newton was guilty of aggravated child molestation, the State was required to establish that Newton committed "an offense of child molestation which . . . involves an act of sodomy." OCGA § 16-6-4 (c).

---

[1] OCGA § 24-3-16 states that
[a] statement made by a child under the age of 14 years describing any act of sexual contact . . . performed . . . on the child by another . . . is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.

Newton argues that the evidence was insufficient to support the rape and aggravated child molestation convictions because the State failed to produce any scientific evidence such as a physical examination, rape kit, or DNA results, and the record was devoid of evidence of any vaginal or rectal injury. For a rape conviction, corroboration, scientific or otherwise, is no longer necessary to support the victim's testimony. See *Warren v. State*, 265 Ga. App. 109 (592 SE2d 879) (2004) (Warren's contention that his conviction must be reversed "because the State failed to provide corroborating scientific evidence such as DNA evidence or a rape test [was] . . . patently erroneous"). The victim's testimony that Newton's private part "went on the inside" of her private part sufficed to sustain Newton's conviction for rape. See OCGA § 16-6-1 (a) (2).

Similarly, the victim's testimony alone is sufficient to sustain a conviction for aggravated child molestation. OCGA § 24-4-8; *Redman v. State*, 281 Ga. App. 605, 606 (1) (636 SE2d 680) (2006). T. W.'s testimony that Newton's private part penetrated her anus sufficed to show that Newton committed aggravated child molestation with the intent to satisfy his sexual desires. See OCGA § 16-6-4 (c).

2. Newton asserts that the trial court erred in admitting the victim's taped interview because the trial court did not view the tape in its entirety before admitting it and the tape lacked sufficient indicia of reliability. Again, we disagree.

A finding of sufficient indicia of reliability is "not a *condition precedent* to the admissibility of the statement; rather, this statutory requirement is met if after both parties have rested, the record contains evidence which would support such a finding." (Citation and punctuation omitted; emphasis in original.) *In the Interest of K. C.*, 258 Ga. App. 363 (1) (574 SE2d 413) (2002). "The trial court has broad discretion in determining the admissibility of child hearsay evidence, and we will reverse a trial court's ruling on the admissibility of statements under OCGA § 24-3-16 only if the trial court abused its discretion." *Nelson v. State*, 279 Ga. App. 859, 861 (1) (632 SE2d 749) (2006).

In *Gregg v. State,* 201 Ga. App. 238 (411 SE2d 65) (1991), we set forth certain factors the trial court may consider in determining the reliability of a child's statements:

> (1) the atmosphere and circumstances under which the statement was made (including the time, the place, and the people present thereat); (2) the spontaneity of the child's statement to the persons present; (3) the child's age; (4) the child's general demeanor; (5) the child's condition (physical or emotional); (6) the presence or absence of threats or

promise of benefits; (7) the presence or absence of drugs or alcohol; (8) the child's general credibility; (9) the presence or absence of any coaching by parents or other third parties before or at the time of the child's statement, and the type of coaching and circumstances surrounding the same; and the nature of the child's statement and type of language used therein; and (10) the consistency between repeated out-of-court statements by the child.

(Emphasis omitted.) Id. at 240-241 (3) (b).

The State's evidence at the pre-trial hearing and at trial established a sufficient showing of indicia of reliability, within the meaning of OCGA § 24-3-16, as to the victim's out-of-court statements. T. W. made a spontaneous outcry to her teacher, which she reported in greater detail to her school counselor on the same day. T. W.'s statement to the licensed counselor at Sunshine House, Ms. Harris, was consistent with her previous statement to the school counselor, and T. W. was not coached, pressured, threatened, or promised any benefits in exchange for giving her statement. For the reasons set forth above, we find that the trial court did not abuse its discretion in admitting the victim's forensic interview. *Pickle v. State*, 280 Ga. App. 821, 832-833 (2) (635 SE2d 197) (2006).

3. Newton asserts that the trial court erred in denying his motion in limine allowing the admission of three pornographic magazines. We are not persuaded.

"[A]dmission of evidence is a matter resting within the sole discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse." (Citation and punctuation omitted.) *Drammeh*, supra, 285 Ga. App. at 548. In the prosecution of sexual child molestation, pornographic materials are admissible only if they can be linked to the crime charged. *Gruelich v. State*, 263 Ga. App. 552, 553 (1) (588 SE2d 450) (2003).

Here, Newton admitted to looking at the pornographic magazines while he was in the same room as the victim in her mother's house on the date of the child molestations. This evidence was admissible to show Newton's lustful disposition and bent of mind to commit the acts of child molestation on the same day and was not introduced "merely to show [Newton's] interest in sexual activity." *Simpson v. State*, 271 Ga. 772, 774 (1) (523 SE2d 320) (1999); see also *Lunsford v. State*, 260 Ga. App. 818, 822-823 (4) (581 SE2d 638) (2003) (admission of the "Dirty Debutantes [pornographic] videotape was not in error, as it illustrated [appellant's] interest in sexual activities involving young women") (citation omitted).

4. Newton argues that the trial court improperly admitted the rebuttal testimony of Valerie Rucker because Rucker offered similar

YALE LAW LIBRARY

transaction evidence for which Newton did not have prior notice. We disagree.

Shipman's testimony that she had never heard of any inappropriate behavior by Newton with the victim or other children opened the door to the State's rebuttal evidence. Since the only conceivable purpose of Shipman's testimony was to elicit evidence concerning Newton's character, the trial court did not err in allowing the complained of testimony to impeach Shipman's testimony. OCGA § 24-9-82; *Capps v. State*, 273 Ga. App. 696, 698 (3) (615 SE2d 821) (2005). Further, we conclude that the State was not required to notify Newton of its intent to introduce such evidence under Uniform Superior Court Rule 31.3, since this rule "does not render impeachment evidence inadmissible. [Cits.]" *Renn v. State*, 234 Ga. App. 790, 791 (2) (508 SE2d 174) (1998).

In light of the foregoing, we affirm the trial court's order denying Newton's motion for a new trial.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 27, 2009.

*Lance J. Hamilton*, for appellant.

*Steven Askew, District Attorney, Mary K. McKinnon, Assistant District Attorney*, for appellee.