## A11A0338. DAMEROW v. THE STATE.
(714 SE2d 82)

MILLER, Presiding Judge.

Following a jury trial, Jason George Damerow was convicted of child molestation (OCGA § 16-6-4 (a)).[1] The trial court denied Damerow's motion for new trial. On appeal, Damerow (1) challenges the sufficiency of the evidence supporting his conviction. He further contends that the trial court erred in (2) failing to give the complete pattern jury charge on witness credibility and (3) admitting his prior convictions as impeachment evidence. In addition, Damerow asserts that (4) his trial counsel was ineffective. We discern no reversible error and affirm.

---

[1] Although the indictment also charged Damerow with two additional counts of child molestation, the jury acquitted Damerow of those charges.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the evidence was sufficient to find the defendant guilty beyond a reasonable doubt.

(Citations and punctuation omitted.) *Fogerty v. State*, 304 Ga. App. 546 (1) (696 SE2d 496) (2010).

So viewed, the trial evidence shows that Damerow was the stepfather of the 15-year-old victim, J. S. J. S. testified that in 2006, when she was between 13 and 14 years old, Damerow began grabbing her buttocks. She stated that, eventually, the molestation escalated and Damerow would force her to kiss him. J. S. disclosed the incidents to her mother. Upon being confronted with the allegations, Damerow told the mother that J. S. had asked him to teach her how to kiss. The mother removed Damerow from the residence and obtained a divorce.

Later, in May 2007, Damerow began visiting the residence again. In September 2007, the mother allowed Damerow to move back into the residence. J. S. testified that when Damerow returned to the residence, the molestation continued and escalated further. On or about October 20, 2007, between the hours of 2:30 a.m. and 3:00 a.m., Damerow entered J. S.'s bedroom, laid on top of her, rubbed her breasts, and kissed her on the mouth, neck, and breasts. J. S. further testified that Damerow came into her bedroom and molested her almost every night. Damerow threatened to kill J. S. and her family if she told anyone about the molestation.

Eventually, J. S. disclosed the molestation to her friend, whose father was a police officer. Following J. S.'s disclosure, an investigation was launched. J. S. gave a statement to the police and further participated in a forensic interview concerning the molestation. The forensic interview was recorded by videotape and was played for the jury at trial.

J. S.'s family was referred to counseling by the Department of Family and Children Services ("DFACS"). During the counseling sessions, J. S. told the family counselor about the molestation and her fear of Damerow.

Damerow was arrested and charged with three counts of child molestation. During an interview with police, Damerow denied J. S.'s allegations. Damerow also testified at trial and again denied the molestation allegations. He also denied J. S.'s allegation that he had threatened to kill her and her family. Damerow claimed that J. S. had made up the allegations because he was the disciplinarian of the

family and she wanted to have him removed from the residence.

Following the presentation of the evidence at trial, the jury convicted Damerow of one count of child molestation, but acquitted him of the other two counts.

1. Damerow contends that the evidence was insufficient to sustain his conviction. We disagree.

"A person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]" OCGA § 16-6-4 (a) (1). J. S.'s testimony at trial established that Damerow had entered her bedroom, laid on top of her, rubbed her breasts, and kissed her on the mouth, neck, and breasts. Based upon this testimony, the jury was authorized to find that Damerow was guilty of this offense as charged. See id.; *Maddox v. State*, 263 Ga. App. 507, 508-509 (1) (588 SE2d 305) (2003).

Damerow nevertheless argues that the verdict was against the weight of the evidence, and therefore, he was entitled to a new trial.

> OCGA § 5-5-21 specifically empowers trial courts with the authority to weigh the evidence. It provides that a trial judge, in the exercise of a sound discretion, may grant a new trial "in cases where the verdict may be *decidedly and strongly against the weight of the evidence* even though there may appear to be some slight evidence in favor of the finding." On a motion for new trial alleging this ground, the court sits as a "thirteenth juror." The motion is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial on this ground should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.

(Citations and punctuation omitted; emphasis in original.) *Rutland v. State*, 296 Ga. App. 471, 476 (3) (675 SE2d 506) (2009).

The trial court considered Damerow's arguments in the context of OCGA § 5-5-21, but ultimately decided this claim against him. We discern no error.

> As there were no eyewitnesses to the alleged incident, resolution of the issue rested largely upon the testimony of [Damerow] and [J. S.]. Each presented his or her version of [whether the molestation had occurred], and the jury was allowed to consider the history of the relationship between the two and to consider their conduct before and after the incident. . . . This is simply not a case in which the evidence

preponderates heavily against the verdict. The trial court did not err in refusing to grant [Damerow's] motion for new trial.

(Punctuation and footnote omitted.) *Taylor v. State*, 259 Ga. App. 457, 460-461 (2) (576 SE2d 916) (2003).

2. Damerow further contends that the trial court erred in failing to give the complete pattern jury charge on witness credibility. The Suggested Pattern Jury Instructions on the credibility of witnesses provides as follows:

> You must determine the credibility or believability of the witnesses. It is for you to determine which witness or witnesses you believe or do not believe, if there are some whom you do not believe.
>
> In deciding credibility, you may consider all of the facts and circumstances of the case, the manner in which the witnesses testify, their interest or lack of interest in the case, their means and opportunity for knowing the facts about which they testify, the nature of the facts about which they testify, the probability or improbability of their testimony, and the occurrences about which they testify. You may also consider their personal credibility insofar as it may have been shown in your presence and by the evidence.

(Punctuation and footnote omitted.) Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.31.10.

The record shows that the trial court gave an abbreviated version of the pattern charge, which included the first paragraph of the aforementioned charge, but omitted the second paragraph setting forth the factors for determining witness credibility. Nevertheless, Damerow failed to present any jury charge requests. In the absence of a proper request, the trial court's omission of the rules by which to test the credibility of witnesses is not erroneous. See *Benton v. State*, 185 Ga. 254, 257 (6) (194 SE 166) (1937); *Giles v. State*, 113 Ga. App. 629 (149 SE2d 432) (1966).

3. Damerow also argues that the trial court erred in admitting his prior convictions for impeachment purposes. Again, we discern no error.

OCGA § 24-9-84.1 (a) governs the manner in which a defendant's credibility may be impeached if he elects to testify. Subparagraph (3) of the statutory provision pertinently states that "[e]vidence that . . . the defendant has been convicted of a crime shall be admitted if it involved dishonesty or making a false statement[.]"

Here, Damerow testified in his own defense at trial. For impeachment purposes, the State introduced evidence that Damerow had prior convictions for felony forgery (OCGA § 16-9-1 (a)), misdemeanor theft by deception (OCGA § 16-8-3 (a)), and misdemeanor giving a false name to a law enforcement officer (OCGA § 16-10-25).[2] Although Damerow's counsel initially objected to the admissibility of the prior convictions, the trial court overruled his objection. Thereafter, when the prior convictions were formally tendered into evidence, Damerow's counsel stipulated to their admission.

In light of the stipulation, Damerow's instant challenge to the admission of his prior convictions has been waived. See *Relaford v. State*, 306 Ga. App. 549, 553 (1) (702 SE2d 776) (2010) (trial counsel's failure to object to the admission of defendant's prior convictions waived the issue). See also *Martin v. State*, 251 Ga. App. 149 (1) (553 SE2d 827) (2001) (concluding that any objection that defendant had to the admission of the challenged evidence was waived by his stipulation to its admission at trial).

Even if the claim had not been waived, however, the prior convictions were admissible under OCGA § 24-9-84.1 (a) (3) since they each involved dishonesty or making a false statement, and bore directly upon Damerow's truthfulness and veracity. See *Whatley v. State*, 296 Ga. App. 72 (673 SE2d 510) (2009) (concluding that a witness's prior convictions for forgery and giving a false name to a police officer were admissible under OCGA § 24-9-84.1 (a) (3)); *Habersham v. State*, 289 Ga. App. 718, 720-721 (4) (a) (658 SE2d 253) (2008) (concluding that a defendant's prior conviction for giving a false name to a police officer was admissible for purposes of impeachment); *Scott v. State*, 277 Ga. App. 876, 878 (1) (627 SE2d 904) (2006) ("A person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property."); *Hall v. State*, 180 Ga. App. 210, 213 (348 SE2d 736) (1986) (concluding that a defendant's prior conviction of forgery was "a crime of moral turpitude which [went] directly to the defendant's truthfulness and veracity").

4. Damerow next claims that his trial counsel provided ineffective assistance in several respects.

> To prevail on a claim of ineffective assistance, appellant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that

---

[2] Under OCGA § 24-9-84.1 (b), a defendant's convictions are admissible if they are ten years old or less. Although the record fails to contain the certified copies of Damerow's prior convictions that were admitted as trial exhibits, it is undisputed that the convictions were less than ten years old.

there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. Appellant must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct. In reviewing a lower court's determination of a claim of ineffective assistance of counsel, an appellate court gives deference to the lower court's factual findings, which are upheld unless clearly erroneous; the lower court's legal conclusions are reviewed de novo.

(Citations omitted.) *Boatright v. State*, 308 Ga. App. 266, 267 (1) (707 SE2d 158) (2011). Applying these standards, we turn to address Damerow's claims.

(a) Damerow first argues that his counsel was ineffective for failing to object to improper testimony that served to bolster J. S.'s credibility.

(i) In this regard, Damerow complains that several of the State's witnesses — including the mother, the investigating officer, the forensic interviewer, and the family counselor — were allowed to give testimony repeating J. S.'s disclosures regarding the molestation, which reflected upon the consistency and credibility of her statements.

"It is true that a witness' credibility may not be bolstered by the opinion of another, even an expert, as to whether the witness is telling the truth." (Citations and punctuation omitted.) *Brown v. State*, 293 Ga. App. 633, 636 (1) (c) (667 SE2d 899) (2008).

Georgia does not allow witnesses to opine that a party or victim is lying or telling the truth, for under OCGA § 24-9-80 credibility is a matter solely within the province of a jury. An expert witness may not testify as to his opinion of the victim's truthfulness. The courts of this State have allowed an exception to the general rule in limited circumstances when the conclusion is beyond the ken of the average layman. It is only where the nature of the question is such that the factors leading to a conclusion are not known to the common or average man, but are among those things shrouded in the mystery of professional skill or knowledge, that the opinion or conclusion of an expert should be deferred to as to an ultimate issue.

(Citations and punctuation omitted.) *Patterson v. State*, 278 Ga. App.

168, 171 (628 SE2d 618) (2006).[3] Moreover, contrary to the State's argument, objectionable testimony that bolsters the victim's credibility does not otherwise become admissible when the defense "opens the door" by challenging the victim's credibility. Id. at 172.

More leniency in the evidentiary rule has been granted under the Child Hearsay Statute, OCGA § 24-3-16, which allows testimony from both the child victim and witnesses to the child's later reaction, even if the hearsay may be bolstering. See *Bell v. State*, 294 Ga. App. 779, 781 (4) (670 SE2d 476) (2008). Significantly, however, the Child Hearsay Statute only applies to a "statement made by a child under the age of 14 years[.]" OCGA § 24-3-16. Since J. S. was 14 years old when she made the disclosures at issue, the Child Hearsay Statute is inapplicable in this case.

The State nevertheless suggests that the testimony repeating J. S.'s disclosures was admissible as prior consistent statements. We disagree.

> A witness's prior consistent statement is admissible only where: (1) the veracity of a witness's trial testimony has been placed in issue at trial; (2) the witness is present at trial; and (3) the witness is available for cross-examination. A witness's veracity is placed in issue so as to permit the introduction of a prior consistent statement if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination. Even then, to be admissible to refute the allegation of recent fabrication, improper influence, or improper motive, *the prior statement must predate the alleged fabrication, influence, or motive.*

(Punctuation and footnotes omitted; emphasis supplied.) *Duggan v. State*, 285 Ga. 363, 366 (2) (677 SE2d 92) (2009).

Here, J. S.'s veracity was challenged on cross-examination, based upon a defense theory that she was motivated to fabricate the molestation allegations because she was vindictive and wanted to have Damerow removed from the residence. Under these circumstances, J. S.'s pretrial statements did not predate the alleged motive. It thus follows that the testimony regarding J. S.'s prior statements was improperly admitted. See *Duggan*, supra, 285 Ga. at 366 (2); *Connelly v. State*, 295 Ga. App. 765, 767-768 (3) (673 SE2d 274) (2009).

Notwithstanding the error, however, we conclude that Damerow

---

[3] Here, as in *Patterson*, there was no evidence in this case indicating that the determination of J. S.'s credibility was beyond the ken of the jurors. Id. at 171, n. 5.

has failed to show that he suffered prejudice. The videotape of J. S.'s forensic interview was played during the trial, which allowed the jury to form their own assessment of J. S.'s credibility. Moreover, Damerow was able to test J. S.'s credibility during cross-examination. And, significantly, the jury acquitted Damerow of two of the three child molestation offenses. Such reflects that the jury was able to objectively consider the evidence of the charges, despite the improper bolstering, and that trial counsel was not ineffective in his defense of the case. See *Gregoire v. State*, 309 Ga. App. 309, 311-312 (2) (711 SE2d 306) (2011) (concluding that the defendant's acquittal of the more serious sex offenses supported a finding that trial counsel was not ineffective when he decided to pursue cross-examination instead of objecting to improper bolstering); *Carrie v. State*, 298 Ga. App. 55, 64 (7) (679 SE2d 30) (2009) (same).

(ii) Damerow further argues that trial counsel erroneously failed to object to the forensic interviewer's testimony that J. S.'s demeanor during the interview was consistent with her molestation allegations; the family counselor's testimony that J. S. was consistent with her allegations and did not appear to be vindictive; and, the mother's testimony that she believed J. S. when she made the disclosures. His arguments afford no basis for reversal.

"It is not improper bolstering . . . for a witness to express an opinion as to whether objective evidence in the case is consistent with the victim's story." (Citation and punctuation omitted.) *Mullins v. State*, 298 Ga. App. 368, 369 (1) (a) (680 SE2d 474) (2009). The forensic interviewer's testimony "addresse[d] only [her] objective observations of [J. S.'s] behavior, not whether she found [J. S.'s] statements believable or credible." (Citation and punctuation omitted.) *Brown*, supra, 293 Ga. App. at 636 (1) (c). As such, trial counsel's failure to object to that testimony was not erroneous. Id.

It is a closer question, however, as to the family counselor's testimony that J. S. "was probably the most consistent teenager that [she] had ever worked with concerning sexual abuse," that J. S. "ha[d] been the most consistent with her story," and that "she never felt like [J. S.] was [being] vindictive[.]" See *Chauncey v. State*, 283 Ga. App. 217, 220 (3) (641 SE2d 229) (2007). But, even if this testimony was improper, no prejudice has been shown from trial counsel's failure to object. Rather than objecting, trial counsel engaged in cross-examination, which led the family counselor to qualify her prior testimony and state that she "didn't have any outside evidence to either support or refute the validity of [J. S.'s] story" and that it was not her job to determine whether J. S.'s allegations were supported. "Not objecting to testimony but instead subjecting it to cross-examination may be part of a reasonable trial strategy[.]" (Punctuation and footnote omitted.) *Al-Attawy v. State*,

289 Ga. App. 570, 573 (1) (657 SE2d 552) (2008). Damerow has not shown that trial counsel's manner of addressing the family counselor's testimony was unreasonable.

Notably, the record also shows that the mother's bolstering testimony was elicited from trial counsel during cross-examination. At the motion for new trial hearing, trial counsel explained that he introduced the mother's testimony that she believed J. S.'s allegation to show that it was "totally inconsistent" with her actions of allowing Damerow to move back into the residence. "[T]he scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel." (Citation and punctuation omitted.) *Williams v. State*, 290 Ga. App. 841, 846 (4) (f) (660 SE2d 740) (2008). Trial counsel's strategic decision to cross-examine the mother in accordance with the defense theory was not patently unreasonable, and Damerow has not shown that the strategy prejudiced his defense. See *Colon v. State*, 275 Ga. App. 73, 82 (9) (619 SE2d 773) (2005) (trial counsel's cross-examination of a witness, which elicited testimony that the witness believed the victims, was the result of a valid trial strategy to demonstrate inconsistencies in the testimony and did not amount to ineffective assistance of counsel). See, e.g., *Brock v. State*, 183 Ga. App. 277, 279 (358 SE2d 613) (1987) (trial counsel was not ineffective for failing to object when the victim's mother testified that she believed her child "[w]ith all [her] heart," since the testimony did not prejudice the defense).

(b) In addition, Damerow contends that his trial counsel's performance was deficient since he failed to object to the prosecutor's improper closing arguments. He asserts that during closing arguments, the prosecutor improperly expressed his personal observations of J. S.'s demeanor in the videotape of the forensic interview; expressed his personal belief as to whether Damerow had threatened J. S. to prevent her from immediately disclosing the molestation; and stated that the two expert witnesses "know when somebody is telling the truth."

At the motion for new trial hearing, trial counsel testified that even if the argument regarding the expert witnesses was objectionable, he did not object because he did not want to draw further attention to the argument. To the extent that trial counsel made a reasonable strategic decision not to object to the closing argument, such did not constitute ineffective assistance of counsel. See *Fennell v. State*, 271 Ga. App. 797, 802 (6) (g) (611 SE2d 96) (2005) (trial counsel's failure to request a mistrial based on improper comments made by the prosecutor in closing argument was a matter of trial strategy and did not amount to ineffective assistance). See also *Mency v. State*, 228 Ga. App. 640, 648 (2) (i) (492 SE2d 692) (1997) (trial counsel's explanation that he did not object to the prosecutor's

closing argument because he did not think an objection would be sustained and he did not want to magnify it reflected reasonable trial strategy and did not equate with ineffective assistance).

Moreover, the trial court instructed the jury that the arguments of counsel were not evidence and thus, could not establish any fact. In light thereof, "[Damerow] cannot show there is a reasonable probability that the outcome of the trial would have been different if counsel had argued differently to the jury." (Citations and punctuation omitted.) *Fennell*, supra, 271 Ga. App. at 802 (6) (f). And, the fact that the jury acquitted Damerow of two offenses charged in the three-count indictment "strongly supports the conclusion that [trial counsel's assistance] fell within that broad range of reasonably effective assistance which members of the bar in good standing are presumed to render." (Citations and punctuation omitted.) *Henderson v. State*, 303 Ga. App. 898, 900 (1) (b) (695 SE2d 334) (2010).

(c) Damerow also argues that his trial counsel erred in failing to object to the admission of his prior convictions, failing to file a pretrial motion to exclude the convictions, and failing to introduce evidence as to the minor nature of the convictions. Again, no error has been shown.

As we stated in Division 3 above, Damerow's prior convictions were properly admitted under OCGA § 24-9-84.1 (a) (3). "It follows that counsel did not perform deficiently when he failed to make a meritless objection to this evidence." (Footnote omitted.) *Habersham*, supra, 289 Ga. App. at 721 (4) (a).

We likewise discern no merit in Damerow's claim that trial counsel was deficient for failing to introduce evidence as to the underlying facts showing the nature of his prior convictions. While Damerow characterized the nature of his prior convictions as "minor," his explanation of the circumstances surrounding the offenses further established that his criminal conduct was in fact dishonest and was not legally excusable. To that extent, trial counsel's stipulation to the prior convictions without presenting details that could prejudice the defense was not unreasonable. Contrary to Damerow's claim, "trial counsel was not required to delve into further details, which would have placed undue emphasis on the [prior convictions] and confuse the issues and charges pertinent to the instant case." *Boatright*, supra, 308 Ga. App. at 270 (1) (b), n. 3.

(d) Damerow contends that trial counsel erred in failing to thoroughly investigate and call essential witnesses on behalf of his defense at trial. His contentions are without merit.

Trial counsel testified that when Damerow gave him a list of potential witnesses, he obtained the assistance of an investigator who made efforts to locate and interview them. Some of the witnesses who were located did not have anything to offer in favor of the

defense. Other potential witnesses could not be located or did not respond to his calls.

At the motion for new trial hearing, Damerow presented the testimony of his former co-worker, Brandon Allgood, who claimed that he was available to testify at trial, but was not interviewed. According to Damerow, Allgood's testimony would have refuted one of J. S.'s allegations that he had grabbed her crotch while Allgood was present. Although Damerow claimed that Allgood was an eyewitness and never went to sleep on the night of the alleged incident, Allgood testified to the contrary that he had "a good buzz" from drinking a 12-pack of beer and fell asleep for a couple of hours at the residence. More importantly, Damerow was neither charged nor convicted of this incident. As such, Damerow has not shown that Allgood was an essential witness to the case or that he was prejudiced from his failure to testify at trial. See *Downer v. State*, 310 Ga. App. 136, 140 (3) (a) (712 SE2d 571) (2011) (trial counsel was not ineffective for failing to call a witness when there was nothing in the record to indicate that the witness would have given relevant and favorable testimony to the defense). See, e.g., *Hudson v. State*, 284 Ga. 595, 598 (5) (a) (669 SE2d 94) (2008) (a potential witness's absence from trial did not result in any prejudice to the defense since the witness's struggles with alcohol negatively impacted his credibility and ability to properly recall the events).

Likewise, while Damerow claims that J. S.'s younger sister also should have been called as a trial witness, he has not established that her testimony would have been favorable such that there was a reasonable probability that the outcome of trial would have been different. The younger sister stated that "[e]verything had to have happened behind [her] back," she could not testify that nothing ever happened, and that she "ha[d] no idea" what happened. See *Downer*, supra, 310 Ga. App. at 140 (3) (a) (trial counsel's failure to call the victims' sister as a trial witness was not ineffective since the evidence did not show that the sister's testimony would have helped the defense).

Damerow's argument that J. S.'s mother should have been called as a trial witness for the defense is equally unavailing. Significantly, the mother did testify at trial, and she was cross-examined by trial counsel. The trial court was authorized to find that her additional testimony at the motion for new trial hearing was either cumulative or immaterial to the child molestation offense for which Damerow was convicted. See *Lyons v. State*, 269 Ga. App. 27, 31 (3) (d) (602 SE2d 917) (2004) ("Trial counsel's failure to present cumulative evidence does not amount to ineffective assistance.").

Although Damerow gave the names of several additional individuals who could have served as potential defense witnesses, he did

not present their testimony or a legally acceptable substitute to substantiate his claims that their testimony would have been favorable to his defense. As a result, Damerow failed to meet his burden of establishing his ineffective assistance claim. See *Lupoe v. State*, 284 Ga. 576, 578-579 (3) (b) (669 SE2d 133) (2008).

(e) Lastly, Damerow claims that trial counsel erred by failing to request the pattern charge on credibility and by failing to object to the trial court's abbreviated charge on the issue.

As an initial matter, the record shows that trial counsel did in fact interpose an objection to the trial court's abbreviated charge, but his objection was overruled. While the complete pattern charge was neither requested nor given, Damerow has not shown that he was prejudiced as a result. "[J]ury instructions do not need to track, exactly, the language of pattern jury instructions, so long as the charge is a correct statement of the law and not confusing or misleading." (Punctuation and footnote omitted.) *Watkins v. State*, 265 Ga. App. 54 (1) (592 SE2d 868) (2004). His acquittal of two of the indicted offenses reflects the jury's capability of determining the credibility of the witnesses in accordance with the charge given.

*Judgment affirmed. Ellington, C. J., and Doyle, J., concur.*

DECIDED JULY 6, 2011 — 

*John G. Wolinski*, for appellant.

*Joseph K. Mulholland, District Attorney, Michael L. Bankston, Assistant District Attorney*, for appellee.