**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**October 3, 2014**

# In the Court of Appeals of Georgia

A14A0868. WOFFORD v. THE STATE.

MILLER, Judge.

Following a jury trial, Chad Randall Wofford was convicted of three counts of aggravated child molestation (OCGA § 16-6-4 (c)) and one count of child molestation (OCGA § 16-6-4 (a) (1)) against his girlfriend's two daughters, V. H. and O. H.[1] Wofford, in an out-of-time appeal, contends that (1) the evidence was insufficient to support his convictions; (2) the State failed to prove venue; (3) the trial court erred in refusing to strike a juror; (4) the trial court's instruction to the jury on witness

---

[1] The jury found Wofford not guilty of one count of rape against V. H. (OCGA § 16-6-1).

credibility was erroneous; and (5) trial counsel rendered ineffective assistance.[2] For the reasons that follow, we affirm.

On appeal from a criminal conviction, we view the record in the light most favorable to the conviction.[3] The relevant facts are set forth in *State v. Wofford*, 321 Ga. App. 249 (739 SE2d 110) (2013), which provides as follows:

> During the time period alleged in the indictment, between January 1, 2004 and September 19, 2005, Wofford lived with his girlfriend, V. H. and O. H.'s mother. The girls lived out of state with their father during the 2004-2005 school year and thus attended school there during that school year. There were ongoing child custody issues, and at some point, the girls returned to live with their mother (and Wofford) in Georgia, where they began the 2005-2006 school year.

---

[2] This case has a long and complicated procedural history. Wofford was indicted in December 2005. In May 2008, Wofford filed a motion for discharge and acquittal on speedy trial grounds. This Court affirmed the trial court's denial of Wofford's speedy trial motion in *Wofford v. State*, 299 Ga. App. 129 (682 SE2d 125) (2009). The case proceeded to trial and Wofford was convicted. The trial court thereafter granted Wofford's second amended motion for new trial on the basis that trial counsel was ineffective in failing to call two witnesses who would have testified to V. H.'s character and reputation for truthfulness. The State appealed, and this Court reversed in *State v. Wofford*, 321 Ga. App. 249 (739 SE2d 110) (2013), holding that trial counsel was not ineffective. Wofford thereafter filed a motion for an out-of-time appeal, which the trial court granted, permitting Wofford to file the instant appeal.

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2

On August 29, 2005, then nine-year-old V. H. was sent from her classroom to the school counselor's office. V. H. had gotten into trouble in her fourth grade class, and she was angry. During her session with the counselor, V. H. said that Wofford had touched her private parts. The counselor asked her where Wofford had touched her, and V. H. pointed from her neck to her knees and indicated that the touching had been underneath her clothing. V. H.'s mother was summoned to the school, and V. H. repeated her claim to her mother. The counselor called the police and spoke to a police officer. No police officer came to the school; instead, the mother took both V. H. and her younger daughter, then seven-year-old O. H. who was in the second grade, from the school so that they could go to the police station.

At about 6:00 p.m., the three of them arrived at the police station. A police officer interviewed each girl separately. When the officer was distinguishing between the truth and imagination, V. H. told him that people had not believed her when she told them that she had once gotten a portal to open into a magical realm, but that when she tried to jump through it, she got her shoes wet because the portal had closed.

Regarding her allegation made earlier that day, V. H. told the officer that she had reported to the school counselor that Wofford had given her a "bad touch." Specifically, V. H. said, Wofford had given her a backrub, which she considered a "bad touch" because her father had never given her a backrub. The officer asked V. H. whether she wanted to tell him anything else, and she said no.

Similarly, when the officer interviewed O. H., she said that Wofford had given her a backrub. O. H. volunteered that, earlier that day, she had reported such to the school counselor, adding that her father had never given her a backrub. Having already been apprised that O. H. was perhaps a witness, but not an alleged victim, the officer ended the interview with O. H. The officer closed the investigation as to both girls, concluding that there was insufficient cause to proceed. Both interviews had been recorded onto a DVD, which was played at trial for the jury.

About two weeks later, on the afternoon of Friday, September 16, the school psychologist met with V. H. to evaluate whether the child, who had received special educational services during a prior school year, remained eligible for services that school year. During that evaluation, V. H. told the psychologist that she had lied to police concerning Wofford and that Wofford had done bad things to her. Then V. H. refused to talk further about it. The psychologist testified that, at school, V. H. was "oppositional to teachers, to staff. She would do things to get out of trouble, so in that regard she was manipulative. Whenever she was in trouble, she would try to manipulate the situation to get out of trouble." Further, the psychologist described that when she met with V. H., the child sometimes "made fantastical types of statements. She had a very active fantasy world. . . . She would tell stories that involved witches, warlocks, having a friend who could read other people's minds, those types of things." Nevertheless, the psychologist relayed to the school's assistant principal V. H.'s claim that she had lied to police.

The following Monday morning, September 19, the school's assistant principal met with V. H., who told her that she had lied to police. V. H. was ushered back to the counselor's office. The child was again very upset. After the assistant principal left, V. H. told the counselor that she had lied to the police. The counselor asked V. H. to write down what had happened. V. H. wrote that Wofford had licked her breast and vagina, rubbed his penis on her vagina, that white liquid had come out of his penis, and that he had made her watch videos of individuals having sex; V. H. also wrote that Wofford had done these acts at night, when her mother was at work. The counselor called the police again. This time, the counselor did not call the child's mother.

A police detective with specialized training in investigating child physical and sexual abuse went to the school and talked with the counselor, was given V. H.'s handwritten note, and separately interviewed V. H. and O. H. V. H. affirmed that she had written the note he had received from the counselor. When O. H. was interviewed, she said that she had something to report, but did not feel comfortable speaking it. So she wrote that Wofford had licked her breasts and private part and that Wofford had done something to her sister V. H., but she did not know what. The detective took both girls to a sexual assault center to proceed with extensive interviews and physical examinations. (The detective also contacted the children's mother, as well as the Department of Family & Children Services (DFCS).) Meanwhile, V. H. wrote a second note: "Dear mommy, I'm sorry that I lied. Love, [V. H.]." V. H. never gave the note to her mother; instead, the note was soon passed to the detective.

5

At the sexual assault center, the police detective interviewed each girl separately. V. H. said that, on numerous occasions, Wofford had touched her vagina, put his mouth on her vagina and breasts, and forced her to put her mouth on his penis. She said that she had touched Wofford's penis and described it with words such as "hard," "rubbery," and "squishy." Five or six times, V. H. recounted, Wofford's penis had "squirted" what she described as "white liquid" that was "warm" and also "sticky." V. H. claimed that, about a month before, Wofford had tried to put his penis in her vagina. The sexual encounters with Wofford, V. H. estimated, had been going on for about a year, typically occurring when her mother was at work. She said that Wofford had threatened to harm her if she ever told anyone about what he was doing. During the interview, V. H. was asked about the note she had written to her mother; the child said that, when she previously told the (first investigating) officer that Wofford had only given her a backrub, she was lying for her mother; the child expressed concern that DFCS and the "court" would get involved with their family and that her mother would lose custody of her. In addition, V. H. said, her mother had "bribed" her with candy and "McDonald's." The interview was recorded onto a DVD, which was played at trial for the jury.

When the police detective interviewed O. H., she said that Wofford had massaged her buttocks inside her panties and had touched and licked her vagina. She stated that this had occurred about three months before, when she was on a school break. She also claimed that, in her presence, Wofford had watched movies that depicted adults having sex, that he had "tickled" his private part, and that white liquid had come out of his

6

private part. O. H. told the detective that, two or three times, Wofford had squeezed her hand around his private part, which she described as "squishy," with "bones" in it, and soft on the top. The child described that Wofford had used a sexual device on her, at one point inserting it into her vagina. O. H. said that she had not told the truth when she previously talked to a police officer because talking to people she did not know made her nervous and because she was afraid that Wofford would go to jail. This interview was recorded onto a DVD, which was played at trial for the jury.

That same day, September 19, 2005, each girl was examined by a nurse who was qualified at trial as an expert in sexual assault medical examinations. The nurse testified that V. H. had told her that Wofford had touched her inappropriately, that his private part had touched her private part, that Wofford had placed her mouth on his penis, that she had seen sticky, white liquid come out of his penis, and that he had threatened her not to tell anyone. O. H. told the nurse that Wofford had licked her private part and had made her touch and rub his penis. The nurse found no sign on either girl of vaginal penetration or residual injury. But according to the nurse, in cases of delayed reporting, which the nurse defined as reporting more than 72 hours after an alleged sexual incident, "only in [five] percent of the time do we find injury."

The next week, the police detective interviewed V. H. again. During that interview, V. H. said that Wofford had touched her private part with a vibrating machine.

V. H. and O. H. testified at trial. V. H. was then 13 years old and testified that Wofford had rubbed his penis on her vagina and inserted it into her vagina, rubbed a vibrator on her vagina and inserted it into her vagina, forced her mouth onto his penis, and placed his mouth on her vagina. These incidents occurred when her mother was at work. Wofford had threatened her that he would kill her, her mother, her sister, and her grandmother if she told anyone. Angry at Wofford because of what he was doing to her and wanting him out of the home, she would make up "random excuses" to her mother about why Wofford should have been made to leave. Meanwhile, she resolved to otherwise deal in secret with Wofford's sexual abuse. But when she suspected that he also had been inappropriately touching O. H., she exposed Wofford's sexual abuse because she wanted to protect her younger sister.

V. H. was asked at trial why, after initially stating to the school counselor that Wofford had touched her inappropriately, she told the police officer that Wofford had only given her a backrub. She answered that, on the way to the police station, her mother promised her candy and "McDonald's" if she would say that Wofford had only given her an uncomfortable backrub and had not touched her underneath her clothing. V. H. testified that what she said to the first police officer – that Wofford had only given her a backrub atop her clothing – was a lie. Additionally, V. H. revealed at trial that, during that time (August and September [2005]), her parents were battling over child custody issues and she was worried that she would be taken from her mother and sent to live with her father, which she did not want. But even after recanting her initial allegation, she testified at trial, she again told school

personnel about Wofford's conduct, and she acknowledged at trial that she had written the note: "Dear mommy, I'm sorry that I lied. Love, [V. H.]."

O. H. was [12] years old at trial. She testified that on various occasions during the time Wofford lived with them, he licked her vagina, rubbed his private part against her private part, masturbated in her presence while watching a pornographic movie, and placed her hand on his private part one night while she pretended to be asleep. She had never told her mother about these sexual encounters until after Wofford was arrested because V. H. had told her that Wofford had threatened to kill her mother if either one of them told.

*Wofford*, supra, 321 Ga. App. at 249-253.

1. Wofford contends that the evidence is insufficient to support his convictions given the inconsistencies and contradictions in V. H.'s and O. H.'s testimony and their prior statements and the lack of physical evidence. We disagree.

"A person commits the offense of child molestation when such person . . . does any immoral or indecent act . . . in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]" OCGA § 16-6-4 (a) (1). To prove that Wofford was guilty of aggravated child molestation, the State was required to establish that he committed child

9

molestation involving "an act of sodomy." OCGA § 16-6-4 (c). "Sodomy requires contact between the sex organs of one person and the mouth or anus of another." (Citation and punctuation omitted.) *Green v. State*, 249 Ga. App. 546, 549 (1) (a) (547 SE2d 569) (2001).

Wofford was charged with two counts of aggravated child molestation against V. H. based on his acts of placing her mouth on his penis (Count 2) and placing his mouth on her vagina (Count 3). He was also charged with one count of child molestation against V. H. based on his act of touching her vagina with a vibrator (Count 5).

At the time of trial, V. H. was 13 years old. V. H. testified that Wofford touched her body from her breasts to her vagina with his mouth, penis, and hands, and a vibrator. V. H. also testified that Wofford rubbed his penis on her vagina, placed his mouth on her vagina, made her place her mouth on his penis, and placed a vibrator on and inside her vagina.

Wofford was charged with one act of aggravated child molestation against O. H. based on his act of placing his mouth on her vagina (Count 4). At the time of trial, O. H. was 12 years old. O. H. testified that Wofford licked her vagina, rubbed his penis against her, masturbated in front of her, and put her hand on his penis.

The victims' testimony alone is sufficient to sustain Wofford's convictions. See

*Newton v. State*, 296 Ga. App. 332, 335 (1) (a) (674 SE2d 379) (2009); see also

former OCGA § 24-4-8. While Wofford cites to inconsistencies and conflicts in the

victims' testimony and their prior statements, it is the jury's role to resolve these

inconsistencies and conflicts. See *Newton*, supra, 296 Ga. App. at 335 (a) (1). As to

the lack of physical evidence, the "lack of corroboration only goes to the weight of

the evidence and the credibility of the testifying witness, which is solely within the

purview of the jury." (Citation and punctuation omitted.) *Manuel v. State*, 289 Ga.

383, 385 (1) (711 SE2d 676) (2011). Accordingly, the evidence was sufficient to

authorize a jury to find Wofford guilty beyond a reasonable doubt of child

molestation and aggravated child molestation.

2. Wofford contends that the State failed to prove venue in Gwinnett County.

We disagree.

> Generally, a criminal action must be tried in the county in which
> the crime was committed, and the State may establish venue by whatever
> means of proof are available to it, including direct and circumstantial
> evidence. As an appellate court, we view the evidence in a light most
> favorable to support the verdict and determine whether the evidence was
> sufficient to permit a rational trier of fact to find beyond a reasonable

doubt that the crime was committed in the county where the defendant was indicted.

(Citations omitted.) *Chapman v. State*, 275 Ga. 314, 317 (4) (565 SE2d 442) (2002).

Here, the victims testified that at the time of the offenses, they lived in an apartment and attended school where Jennifer Clabaugh worked. Other evidence showed that Clabaugh was a school counselor at Peachtree Elementary School, which is part of the Gwinnett County School System, and the victims were registered as living at 3846-A Elm Side Village Lane in Norcross when they attended Peachtree Elementary. A Gwinnett County Police Department Officer who conducted the investigation testified that the Norcross apartment was located in Gwinnett County. Based on the above evidence, the jury was authorized to conclude that the crimes occurred in Gwinnett County. See *Ogletree v. State*, 322 Ga. App. 103, 108 (1) (b) (744 SE2d 96) (2013) (holding that victim's testimony that abuse occurred at a party coupled with witness's testimony that party occurred in Troup County proved venue).

3. Wofford next contends that the court erred when it refused to strike Juror No. 38 from the jury pool. We do not agree.

> For a juror to be excused for cause, it must be shown that he or she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside

12

and decide the case based upon the evidence or the court's charge upon the evidence. A trial court's determination as to whether to strike a juror for cause will not be set aside absent some manifest abuse of the court's discretion. An appellate court must pay deference to the finding of the trial court and this deference includes the trial court's resolution of any equivocations or conflicts in the prospective juror's responses on voir dire. The fact that at some point during voir dire, a prospective juror expressed some doubt as to her own impartiality does not demand as a matter of law that she be excused for cause.

(Citations and punctuation omitted.) *Leonard v. State*, 292 Ga. 214, 216-217 (3) (735 SE2d 767) (2012).

During voir dire, Juror No. 38 expressed concerns about his ability to be fair, given the nature of the charges against Wofford. Specifically, Juror No. 38 said that when he heard the charges, he put his own daughters in the position of the victims. However, he reiterated multiple times that he thought he could listen to the facts and evidence and apply the law to the facts of the case in a fair and impartial manner. Juror No. 38 also indicated, in response to questions from both the State and defense counsel, that he had not made up his mind about the case. The trial court denied Wofford's challenge for cause, finding that Juror No. 38's responses indicated that he was not biased and had not prejudged the case.

13

The fact that Juror No. 38 expressed, at one point, some doubt in his ability to be impartial does not require that he be excused for cause. *Leonard*, supra, 292 Ga. at 216-217 (3). "Nor is excusal required when a potential juror expresses reservations about his or her ability to put aside personal experiences." (Citation omitted.) *Holmes v. State*, 269 Ga. 124, 126 (2) (498 SE2d 732) (1998). As Juror No. 38's opinion was not so fixed and definite that the juror would be unable to decide the case based upon the evidence and the court's instructions, the trial court did not abuse its discretion in refusing to strike the juror for cause. See *Amador v. State*, 310 Ga. App. 280, 281-282 (1) (713 SE2d 423) (2011) (upholding trial court's refusal to strike a juror who indicated that it would be difficult to be impartial in a case involving allegations of abuse against a child, but that she could follow the court's instructions).

4. Wofford contends that the trial court erred in instructing the jury that it could consider intelligence in deciding witness credibility. We discern no error.

The trial court charged the jury:

As you pass upon the witnesses' credibility, you should consider all the facts and circumstances of this case. You may consider the [witnesses'] manner of testifying. You may consider their intelligence, their interest or lack of interest in the result of the case. You may consider [the witnesses'] means and opportunity for actually knowing the facts they testified about. You may consider the very nature of the facts they

14

testified about. You may consider the probability or the improbability of their testimony and the occurrences they testified about. You may consider any [witness's] personal credibility if it legitimately appeared to you from the trial of this case.

Wofford did not object to the instruction.[4]

Where, as here, there is no objection to a jury charge as given, the defendant must show plain error. See OCGA § 17-8-58 (b); *White v. State*, 291 Ga. 7, 8 (2) (727 SE2d 109) (2012). "Under this standard, we must determine whether there is an error that has not been affirmatively waived, is clear and obvious, affects the defendant's substantial rights, and seriously affects the fairness, integrity or public reputation of the judicial proceedings." (Citation omitted.) *Hickey v. State*, 325 Ga. App. 496, 498-499 (2) (753 SE2d 143) (2013).

This charge was substantially similar to the pattern jury instruction on credibility. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed.), § 1.31.10, quoted in *McKenzie v. State*, 293 Ga. App. 350, 351-352 (2) (667 SE2d 142) (2008)). This Court has held that the pattern instruction should not include a

---

[4] Although Wofford renewed objections to the charge that he made at the charge conference, he had not objected to the jury instruction on witness credibility.

reference to intelligence as that portion is problematic and confusing. *McKenzie*, supra, 293 Ga. App. at 352 (2). Nonetheless, the charge is not so harmful as to require reversal. *Howard v. State*, 288 Ga. 741, 746-747 (6) (707 SE2d 80) (2011) (inclusion of intelligence as one of the factors in credibility charge does not amount to plain error); *McKenzie*, supra, 293 Ga. App. at 352 (2). Accordingly, Wofford has failed to show plain error.

5. Wofford contends that his trial counsel was ineffective. We disagree.

> In order to prevail on a claim of ineffective assistance, [Wofford] must show that counsel's performance was deficient and that the deficient performance so prejudiced [Wofford] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. [Wofford] must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct. In reviewing a lower court's determination of a claim of ineffective assistance of counsel, an appellate court gives deference to the lower court's factual findings, which are upheld unless clearly erroneous; the lower court's legal conclusions are reviewed de novo.

(Citations and punctuation omitted.) *Hampton v. State*, 279 Ga. 625, 626-627 (619 SE2d 616) (2005).

16

(a) First, Wofford contends that his counsel was ineffective in failing to object to the admission of V. H.'s prior consistent statements.

The Child Hearsay Statute as set out in former OCGA § 24-3-16 provides that the out-of-court statement of a

> child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another or performed with or on another in the presence of the child is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.[5]

Here, V. H.'s school counselor testified that after the initial investigation was closed, she met with V. H. and V. H. told her that she had lied to police. The counselor asked V. H. to write down what had happened and V. H. did so. V. H. wrote that Wofford licked her breast and vagina, rubbed his penis on her vagina, ejaculated, and made her watch pornography, and she saw Wofford masturbating and watching pornography with O. H., who was nude. The trial court admitted V. H.'s written statement into evidence without objection.

---

[5] Effective January 1, 2013, the law governing child hearsay is now codified at OCGA § 24-8-820.

17

Wofford contends that his trial counsel erred in failing to object to the portion of V. H.'s note regarding the abuse she witnessed Wofford commit against O. H. Pretermitting the issue of whether counsel erred,[6] Wofford has not shown prejudice from trial counsel's failure to object to the admission of V. H.'s note. Both V. H. and O. H. testified at trial and were cross-examined about their prior statements and videotapes of both girls' interviews were played for the jury. Thus, the jury was allowed to form its own assessment of V. H.'s and O. H.'s credibility. See *Damerow v. State*, 310 Ga. App. 530, 537 (4) (a) (i) (714 SE2d 82) (2011). Notably, the jury acquitted Wofford of the charge that he raped V. H., indicating that the jury was able to objectively consider the evidence. See id. Accordingly, Wofford has not shown that the result of his trial would have been different if V. H.'s prior statement had not been admitted.

---

[6] At the hearing on Wofford's motion for new trial, trial counsel testified that he failed to object to the portion of V. H.'s note detailing the abuse she witnessed because counsel was unfamiliar with *Woodard v. State*, 269 Ga. 317 (496 SE2d 896) (1998), which had struck down the portion of the Child Hearsay Statute that allowed hearsay evidence from a child who *witnesses* molestation. Accordingly, at the time of Wofford's trial in 2009, V. H.'s statements detailing the abuse she witnessed against O. H. were inadmissible under *Woodard*, although the portion of *Woodard* striking down the statute was later overruled in *Bunn v. State*, 291 Ga. 183 (728 SE2d 569) (2012).

(b) Wofford also contends that his counsel was ineffective in failing to object to the jury instruction on intelligence. As discussed above, no reversible error occurred with respect to the jury charge. Accordingly, Wofford cannot succeed on his alternative claim that trial counsel rendered ineffective assistance in failing to object to that instruction. See *Howard*, supra, 288 Ga. at 747 (6).

(c) Wofford also argues that his counsel rendered ineffective assistance in failing to file a motion for discharge and acquittal sooner and failing to present evidence that the delay prejudiced defendant and that, but for these errors, the outcome of Wofford's first appeal in *Wofford v. State*, supra, 299 Ga. App. 129, would have been different.

> Every constitutional speedy trial claim is subject to a two-tiered analysis as set forth in the United States Supreme Court decisions *Barker v. Wingo*, 407 U. S. 514 (92 SCt 2182, 33 LEd2d 101) (1972) and *Doggett v. United States*, 505 U. S. 647 (II) (112 SCt 2686, 120 LEd2d 520) (1992). As for the first tier of the analysis, it must be determined if the delay in question is presumptively prejudicial. If not, there has been no violation of the constitutional right to a speedy trial and the second tier of analysis is unnecessary. If, however, the delay is determined to be presumptively prejudicial, then the [trial] court must engage the second tier of analysis by applying a four-factor balancing test to the facts of the case. Those four factors include: (1) whether the delay is uncommonly long; (2) reason for delay/whether the government

19

or the defendant is more responsible; (3) defendant's assertion of the right to a speedy trial; and (4) the prejudice to the defendant. On appeal, the relevant standard of review is whether the trial court abused its discretion.

(Citations omitted.) *Rafi v. State*, 289 Ga. 716, 716-717 (2) (715 SE2d 113) (2011).

Wofford specifically asserts that he was prejudiced by the delay in trial because a psychologist, Lori Francis, who interviewed V. H. around the time of the offense and prepared a report, died before trial, and trial counsel could not, therefore, introduce her report at trial. In order to establish prejudice however, Wofford must "present specific evidence showing that the unavailable witness could supply material evidence for the defense." (Citation and punctuation omitted.) *Hill v. State*, 315 Ga. App. 833, 840 (2) (b) (4) (729 SE2d 1) (2012). Wofford has made no proffer as to what Francis would have specifically testified about or why that testimony would have been favorable to the defense. See *Porter v. State*, 288 Ga. 524, 530 (2) (c) (4) (705 SE2d 636) (2011) (holding that the defendant failed to show prejudice where he did not show that a missing witness would have provided testimony favorable and relevant to his defense). Accordingly, Wofford has not shown that the delay in trial prejudiced his case and, on this record, there is no reason to believe that the outcome

20

of his speedy trial motion would have been different but for counsel's alleged errors.

(d) Wofford also asserts that the outcome of his trial would have been different if counsel had supboenaed two teachers that knew V. H. and O. H. This Court considered this very argument in Wofford's second appeal, and concluded that trial counsel was not ineffective in failing to subpoena these teachers. *State v. Wofford*, supra, 321 Ga. App. at 254, 258-259 (1) (a). This ruling is therefore the law of the case and we will not reconsider the matter. See *Hicks v. McGee*, 289 Ga. 573, 578 (2) (713 SE2d 841) (2011) (any ruling by the Court of Appeals shall be binding in all subsequent proceedings in that case).

(e) Wofford also argues that appellate counsel was ineffective in failing to file a cross-appeal in *Wofford v. State*, supra, 299 Ga. App. 129. This argument is nonsensical, since Wofford was the appellant in that case. It appears that Wofford means to assert that his appellate counsel was ineffective in filing a cross-appeal in *State v. Wofford*, supra, 321 Ga. App. 249, but he does not point to any claims that he would have raised there that have not been considered in the instant appeal.

(f) Finally, Wofford contends that this Court should consider the cumulative effect of counsel's errors and hold that counsel was ineffective.

We "evaluate only the effects of matters determined to be error, not the cumulative effect of non-errors." *Bulloch v. State*, 293 Ga. 179, 183 (2) (744 SE2d 763) (2013). Here, even if trial counsel and appellate counsel were deficient in some respects, there is no reasonable probability that, but for those deficiencies, the outcome of Wofford's trial and appeals would have been different. See id.

In sum, the evidence was sufficient to support Wofford's convictions, the State proved venue, the trial court did not err in refusing to strike Juror No. 38, the court's instruction on witness credibility did not require reversal, and Wofford failed to show prejudice from counsels' alleged deficiencies. Accordingly, we affirm Wofford's convictions.

*Judgment affirmed. Doyle, P. J., and Dillard, J., concur.*