A93A0599. SYDENSTRICKER v. THE STATE.
(433 SE2d 644)

BLACKBURN, Judge.

Appellant, John Sydenstricker, appeals his conviction of burglary
and aggravated sexual battery and the trial court's denial of his mo-
tion for a new trial. On appeal, Sydenstricker presents three enumera-
tions of error.

1. In the first enumeration of error, Sydenstricker asserts that
there was insufficient evidence to support the jury's findings of guilt,
specifically the finding of criminal intent. We do not agree. The evi-
dence revealed that on September 4, 1991, Sydenstricker was arrested
and charged with criminal trespass and simple battery[1] after he was
discovered, in the middle of the night in the bedroom of a couple who
lived within a mile of his house. Sydenstricker testified that he had
consumed six beers and approximately eight ounces of rum between
11:00 p.m. and 2:30 a.m. Around 2:30 a.m., Sydenstricker took his dog
for a walk. He testified that during this walk, he became disoriented
and was unsure where he was located. He testified that his dog got
away from him, and that when he caught the dog he saw a garage
with the light on, and he thought he was back at home. He
remembered walking toward the garage, but did not remember what
else transpired until a bearded man was pointing a gun at him.

Ricky and Valerie Jennings own the house in which Syden-
stricker was found. Valerie Jennings testified that she was asleep next
to her husband when she was awakened by something being pene-
trated into her vagina. She turned to look behind her and saw Syden-
stricker pull up his pants. She woke her husband who jumped on
Sydenstriker while she retrieved a gun from the dresser. Ricky Jen-

---

[1] The grand jury upgraded the charges and returned a two-count indictment for bur-
glary and aggravated sexual battery.

nings then held the gun on Sydenstricker while they waited for the police, who Valerie had called. Ricky Jennings testified that during this time, Sydenstricker said, "Kill me, mister. Go ahead and kill me." The Jennings both testified that, while waiting for the police, Sydenstricker did not apologize, show remorse, or explain his presence.

Sydenstricker's dog was running loose in the Jennings' house, and his shoes and dog leash were in the Jennings' living room by a love seat. Sydenstricker had also left his flashlight on the floor in the Jennings' bedroom. The Jennings testified that when they had retired for the night, all the doors and windows were locked. Although the investigating officers could not find any evidence of forced entry by Sydenstricker, Ricky Jennings testified that the door leading from the garage to the kitchen could be pried open without leaving any noticeable marks. The evidence further revealed that the Jennings' house was a ranch style house while Sydenstricker's house was a two story, split level house.

Dr. Williams, an expert in the field of clinical psychology, testified that consumption of the amount of alcohol Sydenstricker had consumed, combined with a lack of alcohol build-up in the system, would intoxicate an individual to the point where the normal cues would be obliterated. Dr. Williams explained that in such a state, one could see things like street lights, yet not be able to identify them. Dr. Williams testified that Sydenstricker could have misunderstood the cues to the Jennings' house so that he thought he was going into his own house. Dr. Williams further testified that in his opinion, Sydenstricker suffered an alcohol blackout, which he defined as a loss of memory with maintained motor functioning. Dr. Williams explained that this condition would change a person's will power but not their moral values per se.

The trial court charged the jury as to the law on presumption of innocence, reasonable doubt, credibility of witnesses, intent, direct and circumstantial evidence, experts, good character, misapprehension of fact, aggravated sexual battery, burglary, rape, and voluntary intoxication. The jury returned a verdict of guilty on the counts of burglary and aggravated sexual battery. We find that the evidence was sufficient to enable a rational finder of fact to find proof of Sydenstricker's guilt beyond a reasonable doubt under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his second enumeration of error, Sydenstricker asserts that the trial court erred in failing to charge the jury that voluntary intoxication was a defense if it rose to the level necessary to negate the intent requirement for the crime involved. Sydenstricker argues that the trial court should have given such a charge, even absent a formal

request, because this was Sydenstricker's primary defense. However, we do not agree that the charge requested by Sydenstricker was applicable in this case and, therefore, it was not error for the trial court to fail to give it.

In *Horton v. State*, 258 Ga. 489, 491 (8) (371 SE2d 384) (1988), the Georgia Supreme Court determined that "[v]oluntary intoxication [was] not a defense to a crime unless such intoxication [had] resulted in the alteration of brain function so as to negate intent. Even then, the brain function alteration must be more than temporary." Id. Sydenstricker failed to offer any evidence that his ability to distinguish between right and wrong had been affected. In fact, Sydenstricker's expert, Dr. Williams, testified that Sydenstricker's condition would not change his moral values. Furthermore, Sydenstricker was unable to show that any alteration to his brain function was more than temporary. See *Horton*, supra.

"The trial court's instruction that 'voluntary intoxication shall not be an excuse for any criminal act' is in accordance with the provisions of OCGA § 16-3-4 (c) and is sufficient. The trial court was not required to charge that [defendant] should be acquitted if he was intoxicated to the point where he could not form the requisite intent for the crimes of [burglary and aggravated sexual battery]." *Franklin v. State*, 183 Ga. App. 58, 59 (357 SE2d 879) (1987).

The trial court did charge the jury "that intent [was] an essential element of any crime and must be proved by the State beyond a reasonable doubt." The trial court went on to charge "that a person will not be presumed to act with criminal intent but the trier of the facts . . . may find such intention or the absence thereof upon a consideration of the words, conduct, demeanor, motive and other circumstances connected with the act for which the accused is being prosecuted." The trial court also charged the jury with respect to mistake "that a person shall not be found guilty of a crime if the act or omission to act constituting the crime was induced by a misapprehension of fact which if true, would have justified the act or omission." We find that the trial court's charges adequately addressed Sydenstricker's primary defense.

3. In his third enumeration of error, Sydenstricker asserts that his trial counsel were ineffective. During the hearing on Sydenstricker's motion for new trial, the trial court heard testimony and counsel's argument with respect to Sydenstricker's ineffectiveness claim. The trial court denied Sydenstricker's motion. On appeal, Sydenstricker contends that his trial counsel were ineffective in that (a) they failed to make formal written requests for jury instructions on intoxication as a defense, intent, specific intent crimes, and lesser-included offenses; (b) they failed to establish Sydenstricker's history of sleepwalking and the history of alcoholic blackouts for members of

his family; (c) they failed to sufficiently develop Sydenstricker's good character and to humanize him; (d) they demonstrated a lack of understanding for the rules of evidence, facilitating "errors" ranging from "nonsensical" objections to failing to re-introduce Sydenstricker's custodial statements after he had testified; (e) they failed to ask for full recordation of the proceedings; and (f) they failed to object to the State's request that the Jennings be allowed to remain in the courtroom after they testified.[2]

"Under the holding in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), there is a two-pronged test for determining the validity of a claim of ineffective assistance of counsel: whether (1) counsel's performance was deficient; and whether (2) this deficiency prejudiced the defense (there is a reasonable possibility that the outcome of the proceedings would have been different, but for counsel's deficiency). The defendant must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct." (Citations and punctuation omitted.) *Penaranda v. State*, 203 Ga. App. 740, 742 (417 SE2d 683) (1992).

"Trial strategy and tactics do not equate with ineffective assistance of counsel. Effectiveness is not judged by hindsight or by the result. Although another lawyer may have conducted the defense in a different manner and taken another course of action, the fact that [Sydenstricker] and his present counsel disagree with the decision made by trial counsel does not require a finding that [Sydenstricker's] original representation was inadequate." (Citations and punctuation omitted.) Id. at 743.

(a) With respect to the lack of written requests for jury instructions, the evidence reveals that the trial court considered Sydenstricker's oral requests for jury instructions; therefore, the fact that no written requests were submitted did not prejudice Sydenstricker's case. Additionally, the trial court did charge on intent, despite no written request for such a charge. Sydenstricker's request for a charge on intoxication as a defense is discussed adversely to him in Division 2 of this opinion. Finally, Sydenstricker's trial counsels' failure to request a charge on lesser-included offenses can be considered a trial tactic. "The appellate courts of this state are reluctant to reverse a case on the ground of ineffective assistance of counsel whenever the specific complaint urged can reasonably be construed as involving defense counsel's trial strategy." (Citations and punctuation omitted.)

---

[2] In his motion for new trial, Sydenstricker asserted 13 errors made by his trial counsel, which supported his ineffective assistance of counsel argument; however, pursuant to this court's Rule 15 (c), we will address only those errors supported in Sydenstricker's brief on appeal.

Id. at 742.

(b) As demonstrated by the evidence produced during Sydenstricker's motion for new trial, Dr. Williams did not support the possibility that Sydenstricker was sleepwalking, but that he was suffering from a "blackout." Furthermore, Sydenstricker's trial counsel testified during the motion for new trial that she had considered the evidence of his history of sleepwalking and determined that it might confuse the jury. Therefore, trial counsel's failure to develop the sleepwalking theory was clearly a tactical or strategic decision.

(c) Sydenstricker next asserts that his trial counsel failed to sufficiently develop his good character. This argument is without merit. Two witnesses testified as to Sydenstricker's good character and any further evidence could have been found to be cumulative. Furthermore, Sydenstricker is unable to show how the lack of additional character evidence prejudiced his case. See *Strickland*, supra.

(d) Pretermitting the validity of the seven alleged evidentiary mistakes identified in Sydenstricker's brief, we find that they did not deprive Sydenstricker of reasonably effective assistance. See *Penaranda*, supra at 745.

(e) Next Sydenstricker asserts that his trial counsel erred by failing to request a full recordation of the proceedings. However, Sydenstricker has failed to show how this fact prejudiced his defense and, therefore, it is without merit. Id. at 742. See also *Ruffin v. State*, 201 Ga. App. 792 (2) (412 SE2d 850) (1991).

(f) Finally, Sydenstricker asserts that his trial counsel erred by failing to object to the State's request that the Jennings be allowed to remain in the courtroom after they testified. This matter is within the sole discretion of the trial judge and an objection may not have produced a different result. Furthermore, "errors in judgment . . . do not constitute denial of effective assistance of counsel." (Citations and punctuation omitted.) *Penaranda*, supra at 742.

"In determining the effectiveness of counsel, the court looks to the totality of the representation provided by counsel. A defendant's right to effective assistance of counsel does not guarantee errorless counsel or counsel judged ineffective by hindsight, but counsel likely to render *and rendering* reasonably effective assistance. A trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous. The trial court's finding in the instant case is not clearly erroneous." (Citations and punctuation omitted.) Id. at 745.

*Judgment affirmed. Johnson and Smith, JJ., concur.*

DECIDED JUNE 24, 1993 —
RECONSIDERATION DENIED JULY 13, 1993 —

*Crumbley & Crumbley, Wade M. Crumbley*, for appellant.
*Tommy K. Floyd, District Attorney, Thomas R. McBerry, Assistant District Attorney*, for appellee.