## A04A1158. AMERSON v. THE STATE.
### (602 SE2d 857)

SMITH, Chief Judge.

Robert William Amerson appeals his conviction by a Warren County jury on two counts of child molestation and two counts of aggravated child molestation involving his girlfriend's granddaughter. Amerson asserts the general grounds and contends his incriminating statements to police were not freely and voluntarily given. We find no error and affirm.

1. We first consider the general grounds. The victim was interviewed by a forensic interviewer employed at an advocacy center for abused children. The victim's videotaped statement described the acts that Amerson committed upon her, and it was admitted under the Child Hearsay Statute, OCGA § 24-3-16.[1] At trial, however, the child refused to testify verbally, merely nodding or shaking her head in response to questions from the attorneys or the court. Her nonverbal responses to leading questions from Amerson's attorney appeared to recant her accusations. But even if this amounted to recantation of her testimony at trial,

> this does not render the evidence insufficient to support the verdict. OCGA § 24-3-16 requires only that the child be available to testify; it does not require the child to corroborate the hearsay testimony. Conflicts between the videotaped statement and the testimony of the child at trial would not necessarily render the former inadmissible, but would rather present a question of credibility of the witness to be resolved by the trier of fact, here the jury. The thrust of the child witness statute is to allow the jury, which must be convinced of guilt beyond a reasonable doubt, to judge the credibility of a child's accusations. If a child, who has reported child molestation to an adult permitted to testify to the out-of-court statement at trial, is incapable of reiterating the accusation at trial or is unresponsive or evasive during cross-examination, the jury must decide the child's credibility.

---

[1] Amerson does not enumerate as error the admission of the victim's hearsay statement under OCGA § 24-3-16 and *Gregg v. State*, 201 Ga. App. 238, 240 (3) (b) (411 SE2d 65) (1991).

(Citations and punctuation omitted.) *Kapua v. State*, 228 Ga. App. 193, 194-195 (1) (491 SE2d 387) (1997). In addition, an expert witness testified that children may recant testimony with regard to sexual abuse for reasons unrelated to falsity, including embarrassment and fear. A doctor also testified that her examination of the victim revealed "unusual" findings that would have caused her to inquire regarding sexual abuse if they had appeared on a routine exam. Construed in favor of the jury's verdict, this evidence was sufficient for the jury to conclude beyond a reasonable doubt that Amerson was guilty of the offenses charged. Id. at 195-196.

2. Amerson also complains that his statements to police were improperly admitted.

While Amerson, his girlfriend, and the victim were in Michigan for a funeral, the victim told her cousin that Amerson had molested her. The Michigan State Police investigated the report and sent a plainclothes detective in an unmarked car to the trailer where Amerson and numerous others were staying. The detective knocked on the door and asked to speak with Amerson. When Amerson came to the door, the detective explained that he wanted to talk to him, and Amerson agreed. He talked to Amerson in his car for purposes of privacy because so many people were in the trailer. Amerson was told "in the beginning, number one," what the detective was asking him about. He was also told that he was not under arrest, that he did not have to answer any questions, and that he was free to leave at any time. Amerson was not handcuffed and was not threatened or promised anything.

After the initial interview, in which Amerson made damaging admissions, the detective asked Amerson to come back to the state police post with him. Amerson expressed his concern about going to jail, and the detective explained that he could not arrest him for anything that occurred in Georgia. He again told him that he was not under arrest and was free to leave or to refuse to answer any questions. Amerson rode in the front seat of the car and was not handcuffed. The detective conducted this second interview in his office rather than the "lockup room" because Amerson was not in custody.

Amerson testified at the *Jackson-Denno* hearing and denied that the detective told him he did not have to speak with him; he stated that "I figured I had to talk . . . 'cause he's the law." He testified that the detective prevented him from returning to the trailer to smoke a cigarette, took him to "his post," and put him under arrest. He acknowledged, however, that he was not arrested until after he had talked to the detective. He also acknowledged that he had been arrested over 13 times and knew "the system . . . how it works." He testified that two uniformed officers had spoken with him the night

before and had allowed him to go back inside the trailer, and that during the "quite a many times" he had ridden in a police car in the past, he was handcuffed and in the back seat. Despite his contention that he considered himself under arrest, he told the detective that he planned to move out of the house when he returned to Georgia "where I wouldn't be around her no more."

The trial court considered the contradictory testimony of Amerson and the detective and found the detective more credible. He concluded

> that the officer was doing a general investigation. I think he did tell Mr. Amerson that he was not under arrest, that he did not have to talk to him, and that he was free to leave. I think he did go to the car for privacy, and I think that . . . Mr. Amerson did cooperate and that he did so freely after having been informed that he was not required to answer any questions. The court concluded that Amerson was not in custody at the time he gave his statement.

This determination was supported by evidence, even though Amerson argues that some inferences cast doubt on the detective's account.

> Factual and credibility determinations of this sort made after a *Jackson-Denno* voluntariness hearing must be accepted by appellate courts unless such determinations are clearly erroneous. Since the trial court's determination here is supported by evidence (even though contradicted), it is not clearly erroneous and is therefore affirmed.

(Citation omitted.) *Brown v. State*, 250 Ga. App. 147, 151 (3) (550 SE2d 701) (2001).

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED JULY 30, 2004.

*Harold A. Hinesley*, for appellant.

*Dennis C. Sanders, District Attorney, William P. Doupé, Assistant District Attorney*, for appellee.