637 S.E.2d 460 (2006)
MANDERS
v.
The STATE.
No. A06A1576.
Court of Appeals of Georgia.
October 5, 2006.
*461 Jeffrey S. Purvis, Tanyard Oaks, Cumming, for Appellant.
Penny A. Penn, District Attorney, Sandra A. Partridge, Assistant District Attorney, for Appellee.
BERNES, Judge.
A Forsyth County jury convicted James Richard Manders of child molestation, aggravated child molestation, simple battery, and sexual battery. On appeal, Manders claims that the evidence was insufficient to prove his guilt beyond a reasonable doubt of the crimes of child molestation and aggravated child molestation. Manders also contends *462 that the trial court erred in denying his motion to suppress and in refusing to give his requested jury charge on accident. For the reasons set forth below, we disagree and affirm.
On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
(Citation and punctuation omitted.) Rosser v. State, 276 Ga.App. 261, 262(1), 623 S.E.2d 142 (2005). So viewed, the evidence shows the following. Manders moved into the home of four-year-old A.P. and A.P.'s mother in May 2002. In the summer of 2002, the mother worked at a restaurant and Manders stayed home with A.P. when A.P.'s mother was working.
That same summer, A.P.'s aunt noticed that A.P.'s arm was bruised and that the child had what appeared to be a "passion mark" on his neck. A.P.'s aunt asked the child what happened, and A.P. said that Manders was responsible for the marks.
Approximately a week later, A.P.'s mother told the aunt that Manders had made A.P. drink shampoo and eat soiled toilet paper. A.P.'s aunt contacted the Department of Family and Children Services ("DFCS").
After receiving allegations that A.P. had been subjected to "bizarre discipline," a DFCS investigator went to A.P.'s home. Because of DFCS' previous relationship with the mother, the investigator obtained an order awarding custody of A.P. to DFCS while the allegations were investigated. A.P. asked the investigator, as they were driving away from the home, "You're going to keep me safe from [Manders]?" and then told the investigator, "[Manders] hurted me." As part of DFCS' standard practice, the investigator took a photograph of A.P. at the DFCS office. When the investigator told A.P. that she was taking a picture of him, A.P. told her that "[Manders] takes naked pictures of me like his kids."
The next day the investigator drove A.P. to a Forsyth County Child Advocacy Center for a forensic interview. During the drive, A.P. told the investigator that "[Manders] plays with my worm." The investigator asked, "What worm?" A.P. pointed to his groin area and said, "[Manders] said he's going to take my worm and go fishing with it."
At the advocacy center, the forensic interviewer interviewed A.P. The interview was videotaped, and the videotape was played for the jury. During the interview, A.P. disclosed that Manders had pinched and touched A.P.'s penis, that Manders "had made him suck [Manders'] penis, and that pee had come out of it." A.P. also stated that Manders made him "eat poop" and washed his mouth out with shampoo.
At trial, A.P. testified that Manders put "poop" and soap in his mouth, that Manders' "pee" went into his mouth, and that Manders touched his "private parts." Additionally, A.P. described Manders as having touched his private part with Manders' private part. However, A.P. denied that any part of Manders' private part went into A.P.'s mouth.
A.P.'s counselor testified that A.P. had told her that he had been touched on his private parts, that he had been forced to eat poop, and that someone had put soap in his mouth. A.P. also told her that Manders, who A.P. referred to as "Big Bad Jim," had touched his private parts. A.P.'s mother testified that on one occasion she found A.P. and Manders naked together in the bed, and on another occasion she found A.P. naked in the bed while Manders was wearing only a towel.
1. Manders claims that the evidence was insufficient to prove his guilt beyond a reasonable doubt of child molestation and aggravated child molestation. Manders argues that A.P. never testified on direct or cross-examination that Manders touched A.P.'s penis with his hand or that Manders engaged in a sexual act involving A.P.'s mouth and Manders' penis, as alleged in the indictment. However, when A.P. was asked on cross-examination if Manders had touched A.P.'s "privates," A.P. responded "he did." *463 A.P. further testified that "Mr. Jim's pee" went into A.P.'s mouth. The jury was also allowed to consider A.P.'s out-of-court statements as substantive evidence under the Child Hearsay Statute, OCGA § 24-3-16, and conflicts between A.P.'s testimony at trial and A.P.'s out-of-court statements were for the jury to resolve. Amerson v. State, 268 Ga.App. 855(1), 602 S.E.2d 857 (2004). Based on the evidence adduced at trial, we conclude that any rational trier of fact could have found Manders guilty beyond a reasonable doubt of child molestation and aggravated child molestation. Id. at 856(1), 602 S.E.2d 857.
2. (a) Manders contends that the search warrant for cameras and film in his car was issued without probable cause, and that the trial court therefore erred in denying his motion to suppress the evidence seized from the car. We disagree.
When reviewing a trial court's decision on a motion to suppress, an appellate court's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility of witnesses are adopted unless they are clearly erroneous.
(Citation omitted.) Bradford v. State, 274 Ga.App. 659, 660(2), 618 S.E.2d 709 (2005).
In determining whether probable cause exists for the issuance of a search warrant, the magistrate's task is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. This Court's review of the magistrate's decision is limited to determining if the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrant. Substantial deference is afforded to a magistrate's decision to issue a search warrant based on a finding of probable cause.
(Citations and punctuation omitted.) Smith v. State, 274 Ga.App. 106, 107(1), 616 S.E.2d 868 (2005).
At the hearing on Manders' motion to suppress, a police captain testified that a DFCS employee told him of a conversation between A.P. and another DFCS case worker. According to the captain's information, A.P. told the caseworker that Manders was going to take naked pictures of him, that Manders had taken naked pictures of his son, and that A.P. had seen naked pictures of Manders' son. The captain subsequently spoke to A.P.'s mother, who told him that there were cameras and film in Manders' 1985 Honda automobile. The captain then prepared an affidavit and application for a search warrant which alleged that there were cameras and film in Manders' car evidencing the crime of child molestation. The affidavit provided, in relevant part:
On August 14, 2002 an interview was conducted at the Forsyth County Child Advocacy Center . . . with a white male age 4 in connection with sexual abuse perpetrated by . . . [Manders]. On August 14, 2002 the victim disclosed to a family service worker . . . while enroute to a foster home that [Manders] had taken pictures of him. During an interview the victim[']s mother, . . . disclosed that the 1985 Honda belonging to . . . Manders contained misc. cameras.
Manders claims that there was no probable cause to issue the search warrant because the supporting affidavit showed no more than he took pictures of a child, which Manders argues is not evidence of a crime. Manders further argues that when the captain was asked on direct examination if he supplied additional information to the magistrate other than what was in the affidavit, the captain responded in the negative. Significantly, however, the captain also testified that "I gave [the magistrate] the facts of the case[,] and the facts of the case are that they were naked photos of children." The trial court subsequently found that the magistrate took into consideration oral representations made by the captain contemporaneous with his request for issuance of the search warrant, and that those representations included the allegations *464 that Manders took photographs of naked children.
Under the totality of circumstances, we conclude that issuance of the search warrant was justified. The magistrate was presented with a substantial basis for concluding that evidence of child molestation would be found in the cameras and film located in Manders' car. See Pettus v. State, 237 Ga.App. 143, 144(2), 514 S.E.2d 901 (1999) (holding that in determining whether a motion to suppress should be granted, a court "may consider oral testimony presented to a magistrate in support of the issuance of a warrant") (citation omitted). See also Smith, 274 Ga.App. at 107-109(1), 616 S.E.2d 868 (among other things, affidavit supporting search warrant showed that the victim, a juvenile female, had advised police that the accused kept a picture album of nude juvenile females in his residence). Compare State v. Kramer, 260 Ga.App. 546, 548-549(2), 580 S.E.2d 314 (2003) (trial court did not err in granting motion to suppress seizure of videotapes where, among other things, there was no evidence the accused showed videotapes to the victim, videotaped the victim, or watched videotapes with the victim). Accordingly, the trial court did not err in denying Manders' motion to suppress.
(b) The search of Manders' car resulted in the seizure of photographs showing Manders' four-year-old minor son in the nude, but not photographs of A.P. Manders claims that the photographs were more prejudicial than probative of any fact at issue in the case, and that the trial court erred in admitting the photographs into evidence. "Admission of evidence is a matter committed to the sound discretion of the trial court, and the trial court's evidentiary decisions will not be disturbed on appeal absent an abuse of discretion." Smith v. State, 265 Ga.App. 236, 238(4), 593 S.E.2d 695 (2004). Here, the state presented evidence that A.P. told a DFCS investigator that "[Manders] takes naked pictures of me like his kids." Another DFCS case worker testified that A.P. told her that "[Manders] was going to take naked pictures of [A.P.] and [Manders] did show him pictures of his son, also naked." A.P.'s statements were relevant to the issue of whether Manders molested him, and the photographs of Manders' son tended to corroborate his statements. The trial court did not abuse its discretion in allowing the photographs into evidence. See Meeker v. State, 249 Ga. 780(1), 294 S.E.2d 479 (1982) ("[p]hotographs which tend to show relevant and material facts are admissible although it is alleged that they are designed to inflame and prejudice the jury") (citation and punctuation omitted).
3. Manders claims the trial court erred when it refused to give his requested jury charge on accident. We disagree.
"A charge on the affirmative defense of accident is required only if there is evidence to support a finding that the defendant committed the acts which were the basis of the charge, but without any `criminal scheme or undertaking, intention, or criminal negligence.'" (Citation omitted.) Griffin v. State, 262 Ga.App. 87, 89(3), 585 S.E.2d 145 (2003). "To establish an evidentiary foundation for an instruction on an affirmative defense such as accident, the defendant must admit to having committed an act that would constitute the crime charged," but claim that the act was done unintentionally. (Citations omitted.) Haynes v. State, 281 Ga.App. 81, 82(2)(b), 635 S.E.2d 370(2)(b)(2006); Maxey v. State, 272 Ga.App. 800, 802(1), 613 S.E.2d 236 (2005) ("In order to assert a statutory affirmative defense, . . . the defendant must admit all of the elements of the crime except intent . . . ").
In his testimony, Manders denied touching A.P.'s penis or placing feces in A.P.'s mouth, as alleged in the indictment. Since Manders denied doing these acts that formed the basis of charges against him, his testimony could not form the basis for the requested jury instruction on accident. See Griffin, 262 Ga. App. at 89(3), 585 S.E.2d 145.
With respect to the allegation in the indictment that he forced A.P. to ingest shampoo, Manders testified that he "guess[ed]" it was possible that shampoo "could have" accidentally gotten into A.P.'s mouth when Manders was bathing him. But, in order to support a jury charge on accident, it was not sufficient for Manders to take the stand and merely *465 speculate about possible alternative scenarios of how the incident transpired. Rather, Manders was required to admit the underlying act that formed the basis for the charge, which he failed to do. See Haynes, 281 Ga.App. at 82(2)(b), 635 S.E.2d 370; Maxey, 272 Ga.App. at 802(1), 613 S.E.2d 236. Accordingly, the trial court committed no error in refusing to give the requested jury instruction.
Judgment affirmed.
ANDREWS, P.J., and BARNES, J., concur.